UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>COREN CLOWN,<br><br>    Defendant. | 3:21-CR-30018-RAL<br><br>OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR SENTENCING REDUCTION |

Defendant Coren Clown, while under indictment in this Court for sexual abuse of a person incapable of consent and incest, 3:19-CR-30130-RAL, Doc. 42; failed to appear for his pretrial conference and jury trial. While his sexual-abuse case was still pending, Clown pleaded guilty to failure to appear. Docs. 15, 16, 19.[1] This Court sentenced Clown on July 19, 2021, to 18 months' imprisonment for failure to appear. Doc. 26. At that time, Clown had no criminal history points, was in criminal history category I, and had a guideline range of 12 to 18 months.

On the same day he was sentenced for failure to appear, Clown pleaded guilty in his other criminal case to a superseding information charging sexual contact with a person incapable of consent, which has a statutory maximum sentence of three years. 3:19-CR-30130-RAL, Docs. 90, 91, 92. Clown received a three-year sentence consecutive to the failure-to-appear sentence in this case; his guideline range would have been 121 to 151 months based on the nature of the sexual

---

[1] When citing to filings in this failure-to-appear case, this Court simply uses Doc. ___. When citing to filings in the sexual-abuse case, this Court uses the case number followed by the document number in that sexual-abuse case.

1

assault on his aunt, but for the 36-month statutory maximum. 3:19-CR-30130-RAL, Doc. 98. Clown is serving his sentence under the authority of a Residential Reentry Management Office in Minneapolis, Minnesota, with a projected release date of September 15, 2024. See www.bop.gov/inmateloc (register number 18317-273).

In his failure-to-appear case, Clown filed a Motion for Reduction in Sentence Under Amendment 821, Doc. 27, noting that with no criminal history points he is eligible for a two-level reduction to his offense level as a "zero-point offender." In Part B, Subpart 1 to Amendment 821 to the Sentencing Guidelines, the Sentencing Commission, effective November 1, 2023, added what now appears in § 4C1.1(a), providing a two-offense-level reduction for many offenders who present zero criminal history points. The new provision states:

> § 4C1.1. Adjustment for Certain Zero-Point Offenders
> (a) ADJUSTMENT.—If the defendant meets all of the following criteria:
>     (1) the defendant did not receive any criminal history points from Chapter Four, Part A;
>     (2) the defendant did not receive an adjustment under § 3A1.4 (Terrorism);
>     (3) the defendant did not use violence or credible threats of violence in connection with the offense;
>     (4) the offense did not result in death or serious bodily injury;
>     (5) the instant offense of conviction is not a sex offense;
>     (6) the defendant did not personally cause substantial financial hardship;
>     (7) the defendant did not possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;
>     (8) the instant offense of conviction is not covered by § 2H1.1 (Offenses Involving Individual Rights);
>     (9) the defendant did not receive an adjustment under § 3A1.1 (Hate Crime Motivation or Vulnerable Victim) or § 3A1.5 (Serious Human Rights Offense); and
>     (10) the defendant did not receive an adjustment under § 3B1.1 (Aggravating Role) and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848; decrease the offense level determined under Chapters Two and Three by 2 levels.

U.S.S.G. § 4C1.1(a).

On August 24, 2023, the Sentencing Commission determined that this change would apply retroactively. The Sentencing Commission further directed that a court granting relief may not

order the release of a defendant to occur any earlier than February 1, 2024. See U.S.S.G. § 1B1.10(e)(2) (Nov. 1, 2023).

In Dillon v. United States, 560 U.S. 817 (2010), the Supreme Court of the United States addressed the process for application of a retroactive guideline amendment, emphasizing that U.S.S.G. § 1B1.10 is binding. The Supreme Court required any "reduction [to] be consistent with applicable policy statements issued by the Sentencing Commission" and directed district courts to follow a two-step approach. Id. at 821. In the first step, a court must determine the inmate's eligibility for a modification and then determine the amended guidelines range. Id. At step two, 18 U.S.C. § 3582(c)(2) instructs courts to consider applicable § 3553(a) factors to determine whether the authorized reduction is warranted in whole or in part under the specific circumstances of the case. Id. at 827. Whether a sentence reduction is warranted is ultimately left to the sound discretion of the court. United States v. Major, No. 23-6166, 23-6187, 2024 WL 1404577, at *4 (2d Cir. April 2, 2024); see generally United States v. Smith, No. 23-5519, 2024 WL 1007115, at *6 (6th Cir. March 8, 2024) (noting that courts have "considerable discretion" in determining whether the § 3553(a) factors support a sentence reduction).

Clown is not eligible for a sentence reduction for his conviction for sexual contact with a person incapable of consent because § 4C1.1(a)(5) excludes sex offenses, nor does he make any such motion in that case. He only seeks the sentence reduction in his sentence for failure to appear, which is an offense not of a nature disqualifying him from a sentence reduction. See U.S.S.G. § 4C1.1(a). He is eligible to be considered for a sentence reduction as a "zero-point offender" on the failure-to-appear sentence. The effect of this is to lower his offense level from 13 to 11 and in turn to lower his guideline range of 12 to 18 months down to 8 to 14 months. Clown requests a sentence reduction to 14 months. Doc. 27 at 1. The United States does not oppose the reduction,

not mentioning at all the context of the failure-to-appear conviction or Clown's other federal conviction for a sex offense. Doc. 30.

Granting Clown a sentence reduction as a "zero-point offender" however, is inconsistent with the applicable policy statements of the Sentencing Commission, which this Court must consider. Dillion, 560 U.S. at 821. The Sentencing Commission has elaborated on the "Reason for Amendment" for "zero-point offenders." In short, "[r]ecidivism data analyzed by the Commission shows . . . that offenders with zero criminal history points have considerably lower recidivism rates than other offenders, including offenders with one criminal history point." U.S. Sent'g Guidelines Manual App'x. C, Amendment 821, at 242 (U.S. Sent'g Comm'n 2023), 821 | United States Sentencing Commission (ussc.gov) ("Among other findings, the report concluded that 'zero-point offenders' were less likely to be rearrested than 'one point' offenders (26.8% compared to 42.3%), the largest variation of any comparison of offenders within the same Criminal History Category." (citing U.S. Sent'g Comm'n, Recidivism and Federal Offenders Released in 2010, at 26 (Sept. 2021), https://www.ussc.gov/research/research-reports/recidivism-federal-offenders-released-2010)). A single driving-under-the-influence conviction serves to supply one point and differentiate between a zero-point and one-point offender. U.S.S.G. § 4A1.1. The "zero-point offenders" are ones with no criminal history points at all, the least dangerous defendants being sentenced.

Technically, Clown had zero criminal history points when he was sentenced for failure to appear and is eligible for consideration for a sentence reduction as a "zero-point offender." But realistically, Clown does not deserve to be considered among the least dangerous defendants being sentenced. Clown's conviction for a sex offense with the behavior occurring before the failure to

4

appear points to a public safety consideration to deny the sentence reduction. See U.S.S.G. § 1B1.10, Application Note 1(B)(ii).

Clown's tribal arrest history also suggests public safety considerations. Criminal history points are not assigned to tribal court convictions, U.S.S.G. § 4A1.2(d)(2)(i), and for good reason. Many tribal courts often lack the resources to have law trained judges, prosecutors, and defense attorneys and do not have to assure Due Process protections under the United States Constitution in their tribal courts. U.S. Sent'g Comm'n, Tribal Issues Advisory Group Report, at 9–13 (May 16, 2016), Report of the Tribal Issues Advisory Group (ussc.gov). After all, tribes and tribal justice pre-date the Constitution and tribes are quasi-sovereign entities. Another reason tribal convictions do not and should not contribute criminal history points is that some tribes will not provide tribal court convictions to pretrial sentence report writers.[2] That happens to be the case with the Cheyenne River Sioux Tribe, of which Clown is a member. Clown's presentence investigation report thus does not show his tribal court convictions but does contain his tribal arrest history. When this Court sentenced Clown in 2021, he was 31 years of age and had the following tribal arrest history in the ten years before sentencing:[3]

(1) 05/23/2014 — Disorderly Conduct and Possession of Marijuana;

---

[2] The court system of the Cheyenne River Sioux Tribe in the exercise of its tribal sovereignty chooses not to provide criminal conviction history, but the United States Probation and Pretrial Services Office receives arrest history from the Cheyenne River Sioux Tribe Law Enforcement Services. Other tribes in South Dakota provide conviction histories, although at least one other tribe in South Dakota has struggled with its recordkeeping and sometimes does and sometimes cannot provide conviction history.

[3] Under the United States Sentencing Guidelines, criminal sentences imposed more than ten years before the commencement of the instant offense do not contribute criminal history points. U.S.S.G. § 4A1.1, Application Note 2. Clown had an arrest history including arrests more than 10 years prior, but those arrests are disregarded here.

(2) 08/30/2014 — Driving Under the Influence, Reckless Driving, and Disorderly Conduct;

(3) 10/07/2016 — Disorderly Conduct, Public Nuisance, Breaking and Entering, and Trespassing;

(4) 02/17/2018 — Driving Under the Influence, Reckless Driving, Speeding, Failure to Dim Lights, Open Container, and Disorderly Conduct;

(5) 08/15/2018 — Driving Under the Influence and Stop Sign Violation; and

(6) 01/09/2020 — Possession of Drug Paraphernalia.

Doc. 98 at 8. Of course, an arrest history does not equate to a conviction history; a defendant is presumed to be innocent even though arrested and charged. This Court did not at either sentencing hearing move Clown out of criminal history category I under U.S.S.G. § 4A1.3(a), a provision recognizing that tribal court convictions may justify such an upward departure. Section 4A1.3(a) of course does not permit upward departure based on a tribal arrest history. The lack of cooperation on conviction history from the Cheyenne River Sioux Tribe frustrates knowing Clown's tribal conviction history. But Clown's arrest history when combined with his conviction for a sex offense against his passed-out aunt—the details of which are both deeply troubling and not necessary to recount here—convince this Court that Clown does not belong among the "zero-point offenders" constituting the least dangerous defendants whom the Sentencing Commission had in mind as having recidivism rates markedly below those with just one criminal history point.

Nor does this Court believe that the factors of 18 U.S.C. § 3553(a) merit a sentence below 18 months for Clown's failure-to-appear conviction. At the time he chose not to appear for his pretrial hearing and trial, Clown was facing a felony charge with a maximum sentence of life imprisonment. Doc. 22 at 3. He had no excuse or explanation for absconding from pretrial

supervision or failing to appear. He had been using methamphetamine while on pretrial release, skipped meeting with the probation officer, and was arrested tribally for drug possession. Id. at 6. While in pretrial custody, he engaged in a physical altercation with another inmate. Id. at 7.

His personal history and circumstances include being raised by a grandmother in Eagle Butte and having two children with a woman with whom he no longer had a relationship. To his credit, he had been a successful boxer, but had lapsed into alcohol and drug abuse. Clown did not complete high school and had not obtained his GED. Clown had a somewhat limited work history, though had held good jobs in construction and manufacturing, which is noteworthy because he comes from a reservation where unemployment is high and good jobs are difficult to find.

In sum, the interests of punishment, deterrence, and protection of the public did not militate for a light sentence for Clown's failure to appear. His tribal arrest history signaled that his alcohol and drug use had led to law enforcement encounters for alleged instances of driving while intoxicated and behavior control issues. A stiff sentence was proper to punish Clown for deciding that the rules of pretrial release did not apply to him and that he did not have to appear for a hearing and trial for sexually assaulting his aunt.

Therefore, it is

ORDERED that Clown's motion for sentence reduction, Doc. 27, is denied.

DATED this 11th day of April, 2024.

BY THE COURT:

_____
ROBERTO A. LANGE
CHIEF JUDGE